Freda Mae MERIDETH, Plaintiff-
Respondent,

v.

**BOARD OF EDUCATION OF ROCKWOOD
R–6 SCHOOL DISTRICT, Defend-
ant-Appellant.**

No. 35913.

Missouri Court of Appeals,
St. Louis District,
Division One.

Aug. 27, 1974.

Ludwig Mayer, Clayton, for defendant-appellant.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, James E. Whaley, St. Louis, for plaintiff-respondent.

DOWD, Chief Judge.

The Board of Education of Rockwood R–6 School District, after a hearing, terminated the indefinite contract of tenured teacher Freda Mae Merideth. The Board's dismissal was based mainly on a finding of excessive absenteeism, inefficiency, and noncompliance with school policy directives. The Circuit Court of St. Louis County reversed the Board's decision, and this appeal followed.

Appellant raises two points on this appeal: First, the court erred in finding and holding that the Board's decision was not supported by competent and substantial evidence and in finding that the Board's decision was against the overwhelming weight of the evidence. Second, the court erred in holding that the Board had failed to comply with the requirements of Section 168.116(2), RSMo 1969, V.A.M.S. Appellant also complains about the court's reference to the unconstitutionality of the Teacher Tenure Act (Sections 168.116–168.118, RSMo 1969, V.A.M.S.). The court's reference to the unconstitutionality of the statute was dicta and was not the basis for the court's decision.[1] However, this complaint shall be discussed later in the opinion.

Respondent moves to dismiss the appeal, alleging appellant's failure to assert Points Relied On in accordance with Rule 84.-04(d), V.A.M.R. This motion is denied.

The Board's action against Freda Mae Merideth, respondent, followed approximately one year after school officials became dissatisfied with respondent's teaching performance and record of absenteeism. Respondent was informed of this dissatisfaction by a formal evaluation report and during conferences with school officials. Subsequent failure to improve resulted in a written warning to respondent. The warning was sent in a letter dated July 10, 1972 and received by respondent July 12, 1972. It warned that respondent should cease excessive absenteeism and instructed respondent to provide full, written explanations immediately following absences in the future. Respondent was told to bring certain of her teaching deficiencies to a satisfactory level of performance. The enumerated deficiencies included respondent's uncooperative attitude and failure to follow her principal's discipline directions, respondent's unorganized record of pupil evaluation, respondent's poor planning and organization for instruction, and respondent's poor evaluation of student progress.

Respondent was informed by the warning letter that she was being transferred to another school in order to continue under the supervision of her principal Mr. Dunn who was familiar with respondent's problems. Although the warning letter invited respondent to contact Mr. Devenport, Director of Personnel, if she had questions regarding the warning letter, she did not contact Mr. Devenport. Respondent began teaching one of two 5th grade classes at Bowles Elementary School in the fall of 1972.

School officials felt that respondent's performance had not improved during the 1972/73 school year and began action

---

1. Respondent concedes that the trial court's reference to the unconstitutionality of the statute is not before this court and was dicta and was not the basis for the court's decision.

which resulted in charges against respondent. On November 20, 1972, respondent was served with a notice of hearing and with copies of the charges and their specifications according to Section 168.116, RSMo 1969, V.A.M.S. Formal charges, their specifications, and the warning letter were filed with the Board on November 29, 1972.

Pursuant to Section 168.114, RSMo 1969, V.A.M.S., which states grounds for termination of an indefinite teaching contract, the Board charged respondent with excessive and unreasonable absence from performance of duties. Respondent was also charged with inefficiency and insubordination in the line of duty. The second charge was based upon respondent's failure to follow her principal's directions concerning disciplinary policies and procedures. The second charge was also based upon respondent's failure to improve record keeping of pupil evaluation as indicated by respondent's grade book, neglect in reporting pupil progress, and neglect in preparing or planning lessons. The charges also stated that respondent lacked willingness to improve and that her continuance as a teacher would prejudice the good order of the school and the relationship between parents and the school.

Respondent was given a public hearing in accordance with her letter (Section 168.-116, RSMo 1969, V.A.M.S.). On January 17, 1973 the Board adopted a unanimous, written decision terminating the indefinite contract of respondent. The Board's decision was based upon the following pertinent findings:

1. All of the requirements prescribed by Sections 168.114 to 168.118, R.S.Mo., of the Public School Laws of Missouri, were fully complied with in these procedures, and this hearing was held and conducted according to law.

2. The teacher was warned in writing, more than thirty days before service of notice of the Charges, of the specific causes which, if not removed, might re-

sult in such charges, as required by subsection (2) of Section 168.116, R.S. Mo., after such a warning was authorized and directed by this board at a meeting held on June 24, 1972.

3. Thereafter, the designated representative of the superintendent of schools, William M. Dunn, Principal of the Bowles Elementary School, and Freda Mae Merideth, the teacher, met and conferred on several occasions in an effort to improve the previously noted deficiencies in the performance by said teacher of her duties and thereby to resolve the matter. These meetings were held during the first quarter of the 1972/73 school year, while the teacher was assigned to teach a 5th Grade Classroom at said school. . . . This board now finds that a substantial effort was made by the superintendent, acting through his duly authorized representatives, to assist and (sic) teacher to improve in the areas in which deficiencies were noted and reported during the 1971/72 school year.

.    .    .    .    .    .

6. This board finds from the evidence not disputed by the teacher that she was absent from her duties by reason of illness for a total of 160½ days during the school years beginning September 1964 and ending June 1972, including 26 days in the 1969/70 school year, 28½ days in the 1970/71 school year, and 36 days in the 1971/72 school year; that these absences were intermittent for repetitive periods of varying lengths; that the average absences for illness recorded for all teachers of the school district for the latter three years were as follows: 3.78 days for the 1969/70 school year; 4.94 days for the 1970/71 school year; and 4.66 days for the 1971/72 school year; that the teacher had additional absences for illness of 12½ days during the first 59 days of the 1972/73 (current) school year, although she had been specifically warned concerning her prior pattern of absences in the warning letter of July

10, 1972; and that such further absences show a lack of improvement in this area of performance.

7. This board finds that the pattern and frequency of absences from duty of this teacher has contributed to the impairment of planning and continuity of instruction of pupils assigned to her classroom, has contributed to the impairment of her ability to evaluate the progress and performance of her pupils, and has contributed in creating undesirable effects in classroom behavior of her pupils and in their ability to adjust to her and to various substitute teachers required to replace her during such absences; and this board finds that such absences from the performance of her duties have been excessive and unreasonable.

8. This board finds that the teacher refused or neglected to obey the express instructions of the Director of Personnel contained in the warning letter of July 10, 1972 which directed her to furnish her supervisory principal a full, written explanation of each absence on the first day immediately following such absence during the school year beginning on August 28, 1972; that such instructions were known to the teacher; that such instructions were reasonable in nature under the circumstances and were given by and with the proper authority. Subsequent compliance by the teacher with these instructions did not comply with the spirit or intent of such instructions.

9. This board finds that the teacher had displayed a lack of ability to deal with problems arising from pupil discipline in her classroom during the second semester of the 1971/72 school year; that she was duly warned of the need for improvement in her relationship with students in the warning letter of July 10, 1972; that she had advice, counsel, and assistance from her building principal in respect to pupil discipline during the 1972/73 school year; and that she failed to show any reasonable improvements in this area of performance during the first quarter of the 1972/73 school year, but sought to excuse such lack of improvement by evidence that she had a difficult class during this year. The board finds such reason to be inadequate to justify her deficiencies in this respect, particularly in view of her prior experience as a classroom teacher.

10. This board finds that the teacher failed to maintain a sufficient class record book for the evaluation of her pupils during the second semester of the 1971/72 school year and that her performance in this area was unsatisfactory for that year; that she was duly warned of the need for improvement in planning and organizing for instructions and in evaluating of student progress in the warning letter of July 10, 1972; that she is required to record pupils' grades in a class record book by Section 300.500, Subsection E.(1) of the Policies, Rules and Regulations of this board; that she had assistance from her building principal in respect to the planning and organizing for instruction in her classroom during the first quarter of the 1972/73 school year; and that she failed to show any improvement in respect to pupil evaluation during the first quarter of the 1972/73 school year and acknowledged a lack of compliance with the aforesaid regulation by admitting that she kept grades (if any were kept) in other forms of records and failed to record same in the class record book provided for that purpose. The board further finds that some of the grades entered in her class record book for the 1972/73 school year, particularly in the area of mathematics, were not based upon any records of performance by her pupils for the period of time for which they were recorded and that the teacher failed to evaluate or grade the work of her pupils within a reasonable time as to report their performance to parents during the first quarter of said school year. This board

further finds that adequate and consistent evaluation of student progress and accurate recording thereof in the class record book is essential to the educational processes in this school district and that this teacher failed in the performance of her duties in this respect, without a reasonable excuse or justification for such failure. This board further finds from the evidence that such failure was willful or intentional on the part of the teacher; that, by her own actions and conduct, she sought to cover up for such failures, being fully aware of her own deficiency in this respect; and that such conduct is detrimental to good order in the school to which she is assigned and to the pupils assigned to her classroom.

11. This board finds that, in addition to the deficiency of this teacher in evaluating student progress of her pupils, as stated above, this teacher has been neglectful or remiss in preparing or planning lessons for pupils in her classroom in advance, in order to provide for an orderly course of instruction, and that this deficiency was particularly detrimental to the pupils in her classroom due to the continued absences of this teacher from her classroom during the first quarter of the 1972/73 school year.

12. This board further finds that the number of pupils assigned to the classroom of this teacher for the 1972/73 school year or the distribution of boys and girls in said classroom did not afford any justification or excuse for the deficiencies of this teacher in the performance of her duties; that there was a failure of proof that the size or composition of her classroom caused or contributed to cause the deficiencies; and that reasonable and proper procedures and judgment were exercised by the building principal in making assignments of pupils to this teacher's classroom for the 1972/73 school year, without bias or prejudice toward this teacher.

13. This board further finds from the evidence presented at the hearing and from the demeanor of the teacher, while testifying in her own behalf, that this teacher has not shown and does not show or demonstrate a genuine willingness or the ability to improve or overcome the deficiencies in the performance of her duties of which she was duly informed in the warning letter of July 10, 1972 and in meetings and conferences with her building principal thereafter. This board has noted, in particular, the attempt by this teacher to justify or excuse her failures and deficiencies by evasions and distortions of facts, particularly in respect to her reasons for her failure to follow the written directions and instructions contained in the warning letter of July 10, 1972, and the failure of this teacher to offer any reasonable explanations in the presentation of her defense for some of the charges and deficiencies testified to by witnesses offered in behalf of the school district.

14. This board finds that the continued employment of this teacher by the school district is prejudicial to good order in the school, is detrimental to the morale of pupils assigned to her and to the other members of the teaching staff of this school district, and has been prejudicial to the relationship between the school system and the parents of pupils assigned to her.

Following the Board's decision, respondent filed timely notice of appeal in accordance with the provisions of Section 168.120, RSMo 1969, V.A.M.S. A full record was forwarded to the Circuit Court of St. Louis County, including the findings and decision of the Board and a transcript of the evidence consisting of three volumes and over six hundred pages. Respondent filed her Petition for Review, setting forth the grounds for objection to the Board's decision and requesting that it be declared void or reversed. The Board's motion to strike and/or for a more definite statement

was overruled. Thereafter, both parties filed memoranda with the Court, and the trial court took the matter under submission on July 23, 1973.

On November 23, 1973, the trial court entered an order reversing the Board's decision. The court's order restored respondent to her position as permanent teacher with all salaries and benefits which had accrued pending appeal. Two grounds for the decision were identified. The court found that the Board's decision was not supported by competent and substantial evidence and was against the overwhelming weight of evidence. The second ground for the decision was that the Board had not complied with Section 168.116(2), RSMo 1969, V.A.M.S. The court found it unnecessary to reach respondent's due process contention but suggested that due process was violated by a statutory procedure vesting both prosecutorial and judicial functions in the Board.

On November 21, 1973, the Board had filed a motion to disqualify the trial judge on the basis that the respondent had "an undue influence over the mind of the judge." The Board alleges that excerpts from the judge's decision were published in "The Telltale", a periodical issued by the Rockwood Community Teachers Association, before the decision was rendered by the court. This motion and the Board's other motion to set aside and/or amend the court's order were denied by the trial court. The Board then appealed to this court.

■ Appellant's first point on appeal is that the findings and decision of the Board were supported by competent and substantial evidence and were not against the overwhelming weight of the evidence and therefore should not have been reversed. In reviewing an administrative decision on evidentiary grounds, the court considers all evidence before the board, but its inquiry is limited. The reviewing court may only determine whether the board could reasonably have made its findings

and reached its result or whether the decision was clearly contrary to the overwhelming weight of the evidence. Blunt v. Parker, 495 S.W.2d 708, 712 (Mo.App. 1973). The court may not substitute its judgment on the evidence and may not set aside the board's decision unless it is not supported by competent and substantial evidence on the whole record. In addition, the evidence must be considered in a light most favorable to the board's decision, together with all reasonable inferences which support it. Harrod v. Board of Education, City of St. Louis, 500 S.W.2d 1, 6 (Mo. App.1973). If evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding. Hanebrink v. Parker, 506 S.W.2d 455, 458 (Mo. App.1974). Also the determination of the credibility of the witnesses is a function of the administrative tribunal. Hanebrink v. Parker, supra, 458.

■ We state the facts in accordance with these principles. Respondent's absenteeism was a persistent problem as indicated by school records. Testimony established ·that respondent was absent 90½ days during the three year period prior to 1972/73. Other Rockwood teachers were absent an average of 13.38 days during that same period. The letter of warning sent to respondent on July 10, 1972 instructed her to reduce absenteeims. However, prior to her suspension respondent was absent 12½ days during the first 59 days of the 1972/73 school year. Respondent's physician, David L. Pittenger, testified that respondent was physically capable of teaching but acknowledged that respondent had been treated for severe nerve problems during the latter portion of 1972. While we find that respondent had an extremely excessive absentee record, we cannot sustain the Board's dismissal of respondent on grounds of excessive and unreasonable absence because the record indicates that the Board had an unlimited or 180-day sick

leave policy at that time. The evidence does not compel the conclusion that respondent's absences were not for legitimate medical reasons.

■ Respondent's frequent absences were not her sole teaching defect. Evidence was presented to the Board indicating that respondent's actual teaching performance and response to directions were deficient. The record suggests that respondent had not met grading and lesson planning standards generally expected of Rockwood teachers and had not fulfilled instructions given her regarding written explanations of absences, disciplinary measures, and lesson planning.

School officials testified that respondent had not adequately complied with written instructions given July 10, 1972 in that respondent failed to provide full, written explanations immediately following absences. Explanations for absences occurring September 29, October 10–20, and November 3 were not provided until November 13, 1972. Respondent's principal Mr. Dunn testified that additional verbal and written requests for respondent's explanations had been necessary before respondent complied.

Evidence was also given indicating that respondent's disciplinary measures had not conformed to the disciplinary policies of the school district. There was testimony based on a student's complaint that respondent had been "screaming all day long." Mr. Dunn was critical of respondent's disciplinary methods for the one and one half year period preceding her dismissal. The record shows that during the 1971/72 school year, Mr. Dunn had received reports from parents that respondent had struck students both before and after respondent was given written instructions that corporal punishment was to be administered reasonably and only in the principal's presence. Mr. Dunn also stated that respondent had refused to readmit a student to her class after the student had been sent to his office. After the letter of warning was sent to respondent, another parent told Mr. Dunn that respondent struck a student. Respondent provided explanations for all such incidents, denying any wrongdoing on her part.

Mr. Dunn testified that he considered respondent insubordinate in discipline matters. Although cautioned about her uncooperative attitude in the letter of warning, respondent evinced continued resistance to disciplinary directives. In contravention of verbal and written instructions given October 9, 1972 and later personal admonitions, respondent continued referring disproportionate numbers of students to the principal for discipline and failed to contact parents of students who had become discipline problems. Respondent admitted that Mr. Dunn had given her instructions and some previous assistance regarding discipline. She said that she had never before encountered disciplinary procedures like those in effect at Bowles School, and she claimed that she was not informed of changes in disciplinary policies when she transferred schools. She indicated that she followed Mr. Dunn's discipline directions when feasible.

Respondent claimed that her class during the 1972/73 school year contained students of divergent abilities and that some students had disciplinary and emotional problems. Others who had dealt with respondent's pupils testified that they had been difficult, and a few testified that Mr. Dunn was not firm enough in handling discipline. However, the record did not indicate that respondent's class contained disproportionate numbers of problem students or that the class was abnormally difficult to handle in previous years. In fact, Mr. Pennycuick, principal of Bowles during 1971/72 who claimed to know 80% of the students in the 5th grade, stated that the other 5th grade teacher at Bowles probably had more problem students than respondent.

School officials were also dissatisfied with respondent's grading procedures both before and after her letter of warning.

Respondent's 1971/72 grade book was examined by Mr. Dunn, Mr. Devenport, and Dr. Roger Marsh, Director of Elementary Instruction, and all found her grade book to be deficient. At the close of the 1971/72 school year, an unusually large number of unreturned papers were observed in respondent's room, and a substitute teacher testified that respondent had left ungraded papers from prior grading periods in her room.

Respondent effected no change in her grading procedure despite the letter of warning. Respondent's 1972/73 grade book was introduced in evidence. Upon examination, Mr. Dunn, Mr. Devenport, and Dr. Marsh found respondent's 1972/73 grade book deficient. Dr. John W. Vaughn, professor at Indiana University's School of Education and unconnected with the Rockwood District, attested that the grade book was "grossly inadequate" and "no record really at all." The record indicated that grades were not identified, summaries of grades for the end of grading periods were missing, and daily work, quizes and tests were not adequately entered in the grade book.

Respondent was required by Section 300.500 E(1) of Rockwood's Policies, Rules and Regulations to record grades in a class record book at proper intervals, such grade book being distributed to Rockwood teachers. Although respondent acknowledged this rule, she said that she had kept her own records at home to be re-recorded in the grade book later. However, Dr. Marsh testified that the rule required that grades be recorded in the grade book as opposed to recordation elsewhere. Further, respondent failed to produce any of her private grade records at the hearing.

Testimony indicated that some grades entered in respondent's 1972/73 grade book did not reflect pupil performance for the period of time for which recorded. Mr. Dunn and Mr. Devenport gave evidence that mathematics grades issued for at least 28 of respondent's students had been based upon a single test, dated September 28, 1972. Mr. Dunn had found 28 mathematics tests. Each test had been divided into six sections, and each section was separately graded. Every test was recorded in respondent's grade book as six separate tests. Mathematics quarter grades appeared to be based upon these entries. Respondent said that she made such entries for her own purpose.

Mr. Dunn and many parents testified that they had been concerned regarding the absence of graded work for respondent's students both prior to and subsequent to issuance of first quarter grades in November, 1972. Parents testified that few graded papers were brought or made available at the school's October "open house" or at parent-teacher conferences after issuance of grades. Large numbers of papers, some ungraded, were observed in respondent's classroom throughout the year, and such papers were bound into six volumes upon respondent's suspension. These volumes were introduced in evidence and contained papers from the beginning of the year.

The record showed that a parent-aide who was assisting respondent was assigned the duty of grading first quarter work papers despite the fact that first quarter grades had already been issued to the students.

Respondent admitted that some papers found in her room were ungraded. She said that first quarter grades had been based upon other papers and workbooks and that ungraded papers had been discussed in class. Dr. Marsh testified that papers should be graded as "feedback" regardless of the quality of the work, and all papers should be graded.

Respondent's general excuse for grading deficiencies was overwork. However, there was testimony by Dr. Vaughn that keeping grade records should have priority, and Mr. Devenport specifically rejected classroom overloading as the cause for respondent's deficient grade book condition,

attributing its deficiency to neglect by respondent.

Rockwood teachers are furnished with a lesson plan book, and Mr. Dunn issued verbal and written directions regarding lesson plan policies on October 9, 1972. Mr. Dunn testified that respondent had not followed his directions on the use of this book. Respondent's lesson plan book was introduced in evidence and had many blank pages. Dr. Marsh testified that virtually no lesson plans had been entered, work actually covered was not identified, and no correlation between the grade book and lesson plan book was discernable. He stated that activities should be recorded explicitly in the lesson plan book, listing names of texts, page numbers, and teaching materials at least two to three days in advance, but this had not been done in respondent's plan book. Mr. Dunn's and Dr. Marsh's testimony that respondent's plan book would be no guide to a substitute was verified by a teacher who had substituted for respondent. Respondent said that she had tried to follow Mr. Dunn's instructions but that she found them unworkable.

Respondent sought to prove that any teaching deficiencies on her part were the result of poor classroom conditions caused by school officials. Although Rockwood has a Triple A rating, it is rated AA in teacher load, one of the ten rating areas, because of the district's teacher-pupil ratio of 1 to 35. However, neither the method of allocation nor the resultant class distribution indicates that respondent's class was a greater burden than that of other teachers. Mr. Dunn described his method of assigning students to the two 5th grade classes. He divided students as to sex and ability and then assigned them to classes. Testimony established that respondent's initial class load of 37 pupils had been reduced to 34. Mr. Dunn said that he had transferred students out of respondent's class in an effort to help her. Mrs. Lochaas, who taught the other 5th grade class at Bowles, started the 1972/73 year with 36 pupils and had 34 at the time of the hearing. Testimony was given that respondent's class contained 22 boys and 12 girls and that the other 5th grade class contained 22 boys and 13 girls. The principal at Bowles in 1971/72 said that he knew most of the students in the 5th grade and that they had been evenly divided as to ability.

Even though other teachers had large classes and classes composed predominantly of males, no other teacher exhibited deficiencies as numerous and severe as respondent's. Evaluation reports and respondent's own records displayed a level of performance far below that of her fellow teachers. Dr. Marsh considered respondent's grade and lesson planning records "the worst I have seen." Respondent sought to prove that other teachers had help of which she had been deprived. Contrary to respondent's testimony, however, testimony by Mr. Dunn, Mrs. Lochaas, and a parent tended to prove that respondent had wanted only certified teacher-aides. Mr. Dunn had been unable to obtain certified aides because respondent's teaching load was less than 35 students. Other teachers arranged, not for certified aides, but for parent-aides with Mr. Dunn's help or permission. Respondent said that she had tried to obtain parent-aides by herself, but a Mrs. Feiner, a parent-aide, testified that respondent never called her after she had offered to help respondent early in the 1972/73 school year. Mrs. Feiner did start work as a parent-aide in November after respondent complained of overwork during a parent-teacher conference. Mrs. Feiner said she was never made to feel welcome.

Respondent introduced evidence of her past teaching performance. She had been a teacher for 26 years prior to her suspension. Her former principal and Mr. Dunn had thought her to be satisfactory in prior years, but the formal evaluation procedure which resulted in respondent's first unfavorable report was only begun during the 1971/72 school year. School officials testified that respondent's performance had grown worse subsequently.

Little, if any, improvement was observed in respondent's performance following an official warning and efforts by school officials to help respondent. During the year preceding the Board's dismissal of respondent, Mr. Dunn said that he devoted more effort to respondent than any other teacher. Respondent had rejected the proposal that she become a substitute teacher with retention of the salary and benefits of a permanent teacher. Mr. Dunn testified that he had tried to ease respondent's 1972/73 teaching load by reducing her class size, by attempting to obtain classroom aides, and by teaching respondent's science class. Respondent denied that Mr. Dunn had taught her class. Mr. Dunn also met with respondent numerous times and gave her suggestions regarding her performance. In spite of such effort, respondent's absences continued unabated and discipline continued as a problem. Grade books and lesson plan books showed no improvement.

Concededly, some evidence at the hearing could support findings contrary to the Board's. However, this cannot be the basis for reversal of the Board's findings. If the reviewing court determines that the Board's decision is supported by competent and substantial evidence upon the whole record and the Board's decision was not clearly contrary to the overwhelming weight of the evidence, then the Board's decision must be affirmed. Hanebrink v. Parker, supra, p. 458. The record indicates that the Board could have reasonably concluded that respondent was deficient in specific areas found by the Board and that respondent failed to comply with instructions enumerated in the Board's findings. Our examination of the record reveals that evidence also supported the Board's findings that respondent's performance did not improve despite opportunity and assistance. There was abundant evidence for the Board to conclude that respondent had not exhibited willingness or ability to improve.

While we find that respondent's absences were far in excess of absences for other teachers, we cannot sustain the Board on this finding because of the Board's unlimited or 180-day absenteeism policy. However, as to other charges, considering the evidence in a light most favorable to the Board's decision, together with all reasonable inferences which support it, we cannot say that the Board's decision was unreasonable. On the contrary, we believe the record clearly shows that the Board's findings and decision which resulted in the termination of respondent's teaching contract were abundantly supported by competent and substantial evidence and were not against the overwhelming weight of the evidence. Accordingly, we find the court erred in reversing the Board's decision on evidentiary grounds.

■ Appellant's second point on appeal is that the trial court erred in holding that the Board failed to comply with the requirements of sub-paragraph 2 of § 168.-116, RSMo 1969, V.A.M.S., which is part of the Teacher Tenure Act. The trial court did not specify where the Board failed in its attempt to comply with the statute; accordingly, we must examine the entire section to discern if, in fact, the Board failed in its attempt to comply with the statute. Section 168.116, sub-paragraph 2 reads as follows:

At least thirty days before service of notice of charges of incompetency, inefficiency, or insubordination in line of duty, the teacher shall be given by the school board or the superintendent of schools warning in writing, stating specifically the causes which, if not removed, may result in charges. Thereafter, both the superintendent, or his designated representative, and the teacher shall meet and confer in an effort to resolve the matter.

This section of the Teacher Tenure Act has recently been interpreted in the case of Blue Springs Reorganized School Dist. v. Landuyt, 499 S.W.2d 33 (Mo.App.1972). In that case, the court said that the purpose of sub-paragraph 2 "is to give the

teacher an opportunity to know exactly what the complaints against her are and to afford her a chance to cure the situation." (l. c. 36). In *Blue Springs* the question before the court was, like the question in this case, the termination of a tenured teacher. The precise issue was whether the written warning sent by the Board to the teacher complied with the statute. The court found the termination improper because the complaints upon which the teacher was found guilty were new and different than the charges in the warning letter. The court also found that the Board did not make a good faith effort to meet with the teacher to discuss the defects in her teaching performance, clearly violating the purpose of the statute.

As *Blue Springs* indicates, the statute requires two specifics before the filing of formal charges. One, the teacher must be given a written warning, stating with particularity the defects in the teacher's performance. Two, the superintendent or his designated representative must meet with the teacher and make a good faith effort to remedy the defects.

Taking the requirement of a written warning first, we must examine the warning notice of July 10, 1972, to see if respondent had adequate notice of her deficiencies. In *Blue Springs* the court held that the charges upon which the teacher was ultimately dismissed were not even closely akin to the original charges in the warning. Not so in this case. Our close comparison of the formal charges and the warning letter of July 10, 1972, reveals that substantially all of the items charged were in the warning letter. The only differences that appear are either insignificant or closely related to the other areas warned of. As to the first element, that of notice, we hold that the procedure followed by the Board adequately informed respondent of her deficient areas.

With regard to the second statutory requirement that of a meeting to cure the defects, respondent argues that the statute

requires the superintendent to make every effort to resolve the difficulty. The argument is that some affirmative action was required, and that the meetings which took place only worsened the situation. Because resolution of this question involves the determination of what meetings were held and their content, we must look to the record, viewing the evidence in a light most favorable to the Board. *Central Bank of Clayton v. State Banking Bd. of Mo.*, 509 S.W.2d 175 (Mo.App.1974).

Mr. Dunn, the respondent's building principal, testified that he met with respondent during the first quarter of the 1972/73 year in an effort to resolve the matter. More specifically, a conference was held on September 14, 1972, which was devoted to a discussion of the deficiencies indicated in the July 10th letter, as well as the areas mentioned in the March 10, 1972 evaluation report. Dunn also testified to numerous discussions with the respondent at which time he made attempts to help her. Furthermore, the record reflects that most of the complaints in the July 10th warning were not new to the teacher; there had been discussions and attempts by Mr. Dunn to help the respondent during the prior school year, even going so far as having respondent transferred to Bowles School where Mr. Dunn was principal because of his familiarity with respondent's problems. Based on the record, we believe the efforts by Mr. Dunn did comply with the requirements that the superintendent or his designated representative and the respondent "meet and confer in an effort to resolve the matter." We, therefore, hold that the trial court erred in holding that the Board had not complied with the statute.

The last point presented concerns the trial court's discussion of the constitutionality of the procedures for termination in the Teacher Tenure Act. We do not reach a discussion of whether those procedures deprive a teacher of due process for the reason that the trial court expressly declined to base its decision on the constitu-

tionality of the statute. In its Memorandum of Order, Judgment and Decree, the trial court said "It is the Court's finding and conclusion that it is not necessary for it to rule the (sic) constitutionality of these provisions of the Statutes because of its findings and holdings . . . ." Also, at a later point, trial court said, "In conclusion, while it is not necessary for this Court to rule upon the constitutionality of the present procedure. . . ." Because the trial court did not base its findings upon constitutional grounds, we need not consider the question.

For all the above reasons, the judgment of the circuit court is reversed and the case is remanded with directions to reinstate the findings and decision of the Board.

SIMEONE, KELLY and WEIER, JJ., concur.