Helen M. ORTBALS,
Plaintiff–Respondent,

v.

SPECIAL SCHOOL DISTRICT OF ST. LOUIS COUNTY, Missouri,
Defendant–Appellant.

No. 53896.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 25, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 29, 1988.

Eric M. Schmitz, Armstrong, Teasdale, Kramer, Vaughan & Schlafly, St. Louis, for defendant-appellant.

Lisa A. Van Amburg, Schuchat, Cook & Werner, St. Louis, for plaintiff-respondent.

GRIMM, Presiding Judge.

The Special School District of St. Louis County, Missouri, appeals from the judgment of the Circuit Court of St. Louis County reversing a decision of the Board of Education of the Special School District to terminate Helen M. Ortbals' teaching contract. We reverse the judgment of the circuit court and remand.

The School District raises four points. First, the findings of fact and conclusions of law of the Board are sufficient to permit review by this court. We agree, because the Board's findings and conclusions reveal the basis of its decision. Second, the Board's conclusion that Ortbals willfully violated, or failed to obey, a published Board policy is supported by substantial and competent evidence. We agree, because the evidence viewed in a light most favorable to the Board's decision supports this conclusion.

For its third point, the School District contends that Ortbals received sufficient notice of the incidents which formed the basis of her termination. We agree, because an agreement between the Board and the teachers' union did not obligate the School District to provide a detailed statement of charges; no prejudice was shown; and a constitutional challenge raised by Ortbals in this appeal was not preserved. Fourth, the Board's decision was properly based on the Board's regulation regarding corporal punishment. We agree, because Ortbals had no objection to its introduction into evidence as the "Board's published policy".

Ortbals, a teacher, was assigned to the Special Districts' Springdale school. On December 11, 1986, Ortbals' school principal and other school district administrators met with her. At that time, they confronted her with an allegation that on the previous day, she had abused a child when she pulled a child up from the restroom floor and kneed him in the back. Ortbals denied that the incident had occurred. She was also told that there was another complaint against her concerning a November 1986 incident. Following the meeting, Ortbals

was given a letter placing her on suspension with pay pending an investigation.

On January 13, 1987, following the investigation, the Superintendent of Schools recommended that the Board terminate Ortbals' teaching contract. On January 15, 1987, pursuant to § 168.116.1, RSMo 1986, Ortbals received a Statement of Charges and a Notice of Hearing issued by the Board. The Statement of Charges set forth details of both the December 1986 and November 1986 incidents. At Ortbals' request, a hearing before the Board was subsequently held.

Following the hearing, the Board issued findings of fact, conclusions of law, and its decision to terminate Ortbals' employment contract pursuant to § 168.114.1(4), RSMo 1986, for a " 'willful ... violation of, or failure to obey' " the Board's published regulations regarding corporal punishment.

Ortbals appealed the Board's decision. In her petition for review, she challenged the Board's action on three points. First, the Board's findings of fact and conclusions of law lacked specificity on the charges and are therefore legally insufficient. Second, the Board failed to promptly notify her of the allegations forming the basis for her termination. Third, the finding that she willfully violated the Board's corporal punishment regulation was not supported by substantial and competent evidence. The Circuit Court reversed, concluding that the Board's decision was "unsupported by competent and substantial evidence" and the decision to terminate Ortbals' contract "was unreasonable and was an abuse of discretion."

The School District first asserts that the Board's findings of fact and conclusions of law are sufficient to permit our review. In administrative proceedings, "[f]indings of fact are not required to be made in any particular form or stated with the same degree of formality as required by judicial proceedings." *Greater Garden Ave. Area Assn. v. City of Webster Groves*, 655 S.W. 2d 760, 767 (Mo.App.E.D.1983). Rather, "Missouri Courts have generally required that the findings of fact in an administra-

tive proceeding reveal the basis of the decision of the administrative agency." *Id.*

█ In its findings and conclusions, the Board first set forth the text of the Statement of Charges it issued to Ortbals. Although the Statement did not give the names of the students involved or the exact dates of the incidents, it did detail Ortbals' actions in both the November 1986 and December 1986 incidents. The Board found that Ortbals was aware of its corporal punishment policy, and that the two incidents of November and December, 1986, constituted corporal punishment in violation of that policy. From this, the Board concluded that Ortbals willfully violated or failed to obey its published corporal punishment policy. We believe that the Board's findings and conclusions reveal the basis of its decision to terminate Ortbals' contract.

█ In its second point, the School District contends that the Board's conclusion that Ortbals willfully violated, or failed to obey, its published corporal punishment policy was supported by competent and substantial evidence. We agree.

Our review of the Board's action is limited:

'The reviewing court may only determine whether the board could reasonably have made its findings and reached its result or whether the decision was clearly contrary to the overwhelming weight of the evidence. [citation omitted] The court may not substitute its judgment on the evidence and may not set aside the board's decision unless it is not supported by competent and substantial evidence on the whole record. In addition, the evidence must be considered in a light most favorable to the board's decision, together with all reasonable inferences which support it. [citation omitted] If evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding. [citation omitted] Also the determination of the credibility of the wit-

nesses is a function of the administrative tribunal.'

*Board of Education, Mt. Vernon Schools v. Shank,* 542 S.W.2d 779, 781–82 (Mo.banc 1976) (*quoting Merideth v. Board of Education of Rockwood R–6 School Dist.,* 513 S.W.2d 740, 745 (Mo.App.E.D.1974)). When the record is viewed in light of these principles, there is competent and substantial evidence to support the conclusion that Ortbals willfully violated, or failed to obey, the Board's corporal punishment policy.

Our Supreme Court in *Shank, supra,* used the definition of "willful" set forth in Webster's Third New International Dictionary: " 'done deliberately; not accidental or without purpose; intentional'." *Shank,* 542 S.W.2d at 782. Further, the Southern District of this court in *Carter County School Dist. v. Palmer,* 582 S.W.2d 347 (Mo.App.S.D.1979) interpreted § 168.114.1 (4), RSMo as requiring proof of (1) an intention to act *and* (2) an intention to violate or disobey a particular regulation. *Id.* at 349–350. We are guided by *Shank* and *Palmer.*

As required by *Shank,* we must consider the evidence "in a light most favorable to the board's decision." The evidence most favorable to the Board's decision is the testimony of Kathleen Deischer, a teacher's aide who observed the November and December incidents. She testified that on December 10, 1986, R *, a five or six year old student, was lying on the restroom floor. Ortbals told R to get up; he did not respond. Ortbals approached R, grabbed his wrist, and yanked him up in the air; his feet left the floor. R was then in a standing position so that his back was to her. Ortbals raised her knee and put it sharply into R's back, causing the child's back to arch. R started crying and Ortbals led him out of the bathroom while holding his arm up in the air.

Deischer also testified that in November, 1986, A, a four or five year old boy, was standing in the restroom doorway. Ortbals instructed him to sit down in the hallway; A did not respond. Ortbals took A by his shoulders, pulled him out of the doorway, and put him down on the floor with sufficient force to cause him to hit his head against the concrete wall. A held his head and screamed.

While "willfulness can seldom be directly proved" *Palmer,* 582 S.W.2d at 350, the Board could have reasonably concluded from this evidence that Ortbals intended to act and that her actions were, thus, willful and not accidental.

Additionally, there is competent and substantial evidence to show that Ortbals intended to violate the Board's corporal punishment regulation. Unlike *Palmer, supra,* relied upon by Ortbals, where the court found that "there was no evidence at all that appellant had ever read or had any knowledge of the regulations he is charged with having *willfully* disregarded" (Emphasis Original) *Id.,* Ortbals admitted she was aware that a corporal punishment policy existed.

In 1984, Ortbals had a conversation with another Springdale school teacher from whom she learned that a student had been spanked in the principal's office "under the Board's policy." Ortbals also admitted that she had read and signed each of her previous employment contracts with the School District and that each contract incorporated all Board policies by reference.

In addition, in February, 1986, Ortbals admitted to the school principal that she engaged in inappropriate behavior towards a student. At that time, she indicated that she knew corporal punishment was inappropriate and was against the rules. Moreover, Ortbals acknowledged that the conduct involved in the November 1986 and December 1986 incidents, as alleged, would constitute acts of corporal punishment.

From this evidence, the Board could reasonably have concluded that Ortbals had knowledge of the Board's corporal punishment policy. Further, the Board could reasonably have concluded from the evidence that Ortbals intentionally violated the Board's policy when she chose to personal-

---

* Only the first initial of each child's name is used.

ly administer corporal punishment. Although Ortbals' evidence would warrant and support a contrary finding, under *Shank*, "it is irrelevant" and this court is bound by the Board's finding when there is conflicting testimony. The Board's findings, conclusions, and decision are supported by substantial and competent evidence on the record. *Shank*, 542 S.W.2d at 781–82. When its decision is supported by substantial and competent, although conflicting evidence, neither the circuit court, nor this court, can substitute its judgment for that of the Board.

In its third point, the School District maintains that Ortbals received sufficient notice of the incidents that served as the basis for her termination. We agree.

At the hearing before the school board, Ortbals' counsel offered into evidence a 1986–1987 agreement between the Board and the Special School District National Education Association. The only further reference to this agreement at the hearing was made by Ortbals' counsel during closing argument. There, counsel referred only to Article 3, § 2.4:

> Any complaint made against an employee by any parent, student, or other person will be promptly called to the attention of the employee. Any complaint not called to the attention of the employee may not be used as the basis for any disciplinary action against the employee.

Ortbals contends that this provision of the NEA agreement was violated because the complaint regarding the November 1986 incident was brought to her attention for the first time on January 15, 1987. Ortbals also contends that this provision was violated because she was not promptly notified at the December 11, 1986, meeting of the specifics of the December incident. We find no merit in these contentions.

■ Section 168.116.1, RSMo 1986 requires "service upon the teacher of written charges specifying with particularity the grounds alleged to exist for termination" before the indefinite contract of a permanent teacher may be terminated. The provision in the NEA agreement cited by Ortbals states only that complaints "will be promptly called to the attention of the employee." We decline to hold that the provision's language obligated the School District to provide Ortbals a detailed statement of charges earlier than § 168.116.1, RSMo 1986 requires.

■ The School District was first notified of the November 1986 complaint on December 10, 1986. The complaint was "promptly called to the attention" of Ortbals the following day in a meeting with school administrators, when, as she testified, she was told that "there had been a complaint about me the month before." In that same meeting, many details of the December 1986 incident were disclosed. Ortbals does not contend, nor does the record indicate, that she requested further information about either the November 1986 or December 1986 incidents prior to the issuance of the Statement of Charges. We find no violation of the cited provision of the NEA agreement.

In her brief before this court, Ortbals cites *Brouillette v. Board of Directors of Merged Area IX, Eastern Iowa College*, 519 F.2d 126 (8th Cir.1975) for the proposition that in this case minimum requirements of due process include "notice of both the names of those who have made allegations against the teacher and the specific nature and factual basis for the charges." *Id.* at 128. However, Ortbals has not complied with the well-settled rule that in order to preserve a constitutional question for review it must be raised at the first available opportunity. *Jerry–Russell Bliss, Inc. v. Hazardous Waste Management Comm'n*, 702 S.W.2d 77, 80 (Mo.banc 1985).

At the hearing before the Board, Ortbals attacked the notice solely on the basis of non-compliance with the NEA agreement. The question raised here regarding minimum due process requirements was not raised at the hearing or in Ortbals' petition for review in circuit court. Therefore, this question has not been preserved for our review.

Additionally, no prejudice has been demonstrated. Nothing in the record indicates

at what point in time Ortbals received the names of the witnesses against her. Nor does the record show that Ortbals requested a continuance to prepare her case after she learned the identity of the witnesses, or that such a request would have been futile.

The School District's final point maintains that Ortbals' termination was properly based on the Board's corporal punishment policy. This point was apparently raised in response to the following conclusion of the Circuit Court:

8. The statement on discipline and corporal punishment, adopted June 23, 1971, marked Exhibit C, has no force and effect in the matter of the termination of the contract of Helen Ortbals, because there was no showing that a copy thereof had been duly signed by order of the Board, that it had been deposited with the District Clerk or that it had been transmitted to the teachers employed in the schools.

■ In her brief filed with this court, Ortbals contends that the School District failed to show compliance with § 171.011, RSMo because it did not prove "that the [corporal punishment] rules were deposted [sic] with the District clerk or duly signed by order of the Board." This contention is without merit in light of the fact that Ortbals' attorney said she had no objection to the introduction into evidence of Exhibit C, being the "Board's published policy regarding discipline and corporal punishment." We "will not set aside an administrative action unless an agency has been given prior opportunity, on timely request by the complainant, to consider the point." *Smith v. Normandy School Dist.*, 734 S.W.2d 943, 949 (Mo.App.E.D.1987).

Ortbals also claims under this point that a copy of the corporal punishment policy was never given to her. In light of our previous holding that there was evidence from which the Board could have reasonably concluded that Ortbals had knowledge of the policy, we reject this claim.

We reverse the judgment of the Circuit Court and remand with directions to enter

a judgment affirming the decision of the Board.

GARY M. GAERTNER and KAROHL, JJ., concur.