Cynthia BURGESS, Plaintiff–Respondent,

v.

FERGUSON REORGANIZED SCHOOL DISTRICT, R–2, Defendant–Appellant.

No. 59846.

Missouri Court of Appeals, Eastern Distirct, Division Five.

Nov. 19, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 1991.

Application to Transfer Denied Jan. 28, 1992.

Darold E. Crotzer, Jr., Clayton, for plaintiff-respondent.

Susman, Schermer, Rimmel and Shifrin, Frank Susman, Randall B. Kahn, Clayton, for defendant-appellant.

SIMON, Judge.

Appellant, Ferguson Reorganized School District (District), appeals from a judgment in favor of respondent, Cynthia Burgess, reversing the Ferguson Reorganized School District Board of Education's (Board) decision to terminate Ms. Burgess's employment as a tenured teacher for the District.

In its three points on appeal, District argues that the trial court erred in: (1) holding that Board Policy 2026 fails to establish a measurable standard that proscribes particular conduct constituting grounds for termination pursuant to Section 168.114.1(4) RSMo 1986 (all references shall be to RSMo 1986 unless otherwise noted); (2) failing to give all presumptions and inferences in favor of the Board, failing to grant deference to the Board's interpretation of its own policy, and failing to leave determination of credibility to the Board; and (3) reversing the Board's determination that Ms. Burgess willfully violated Board Policy 2026. We reverse and remand with instructions.

Initially we note that we must consider the evidence in a light most favorable to the Board's decision, together with all reasonable inferences supporting it. *Harrod v. Board of Education, City of St. Louis,* 500 S.W.2d 1, 6[1] (Mo.App.1973).

The evidence so viewed reveals the following. Cynthia Burgess, a teacher with almost ten years of experience, was employed as a tenured teacher by the Ferguson Reorganized School District and assigned to teach second grade at District's Walnut Grove Elementary School. On April 10, 1989, Ms. Burgess executed a contract with the District for the 1989–1990 academic year. The contract provided that "[t]eacher has received and read rules and regulations and the statement of policies of

the Board of Education and shall continue to keep informed of all policy changes received during the school year." A published copy of the Board policies is given to each teacher at the beginning of each school year. Ms. Burgess received such a copy and was familiar with Board policy. The Board policies refer to the Teacher Tenure Act (Sections 168.102–168.130) and the contract incorporates the Act by reference.

On Tuesday, May 15, 1990, at approximately 2:10 to 2:15 p.m., Ms. Burgess took her students to the playground for recess. Ms. Burgess had a practice of requiring her students who had not completed their homework to complete their work outside during their recess period. Because the benches and curbs on the playground were wet, Ms. Burgess took six of her students back to her room to finish their work. A seventh student arrived in the classroom while she was organizing the students at their desks.

Ms. Burgess returned to the playground to supervise the majority of her students. She remained with her students on the playground for a total of fifteen to seventeen minutes. While Ms. Burgess supervised the majority of her students on the playground, several of the unsupervised students who had remained in Ms. Burgess's classroom sexually assaulted a female classmate, removing her clothing from the waist down and making sexually related statements to her.

On June 29, 1990, Dr. Joan Kowal, Superintendent of the District, served Ms. Burgess with written charges of intentional violation of and failure to obey Board policies. On August 22, 1990, the Board convened a public hearing to determine whether Ms. Burgess willfully violated Board policy and whether she should be terminated. On September 12, 1990, the Board voted to terminate Ms. Burgess's employment based on her willful violation of Policy 2026 and pursuant to Section 168.-141.1(4) of the Missouri Teacher Tenure Act.

The trial court reversed the Board's decision to terminate Ms. Burgess, holding that Board Policy 2026 set forth no measurable standard or guideline proscribing any particular conduct by a staff member, violation of which could lead to discharge. Additional facts will be adduced as necessary in the discussion of the points on appeal.

■ In its first point on appeal District contends that the trial court erred in its holding as to Board Policy 2026. Board Policy 2026, contained within the Board policies distributed to the District's teachers, provides in pertinent part:

> Each staff member is responsible for maintaining order and discipline among students assigned to him.... Pupils should not be left in the classroom, in the building, or on the grounds *for more than a few minutes* without a staff member being *responsible.* Any staff member should assume responsibility for unattended pupils when it appears necessary. (Emphasis added.)

District argues that Board Policy 2026 prohibits a staff member from leaving her pupils for more than a few minutes without getting another staff member to watch or monitor her pupils for her. The District contends that, although "a few minutes" as stated in Policy 2026 is indefinite, it is an expression of a small or limited number. The District points to the Board's finding that Ms. Burgess left several of her students unsupervised in her classroom for fifteen to seventeen minutes and argues that such an absence violates Policy 2026.

District also argues that Policy 2026 is not vague because Section 168.114.1(4) provides what consequences shall follow a failure to comply with Policy 2026. Section 168.114.1(4) states:

> 1. An indefinite contract with a permanent teacher shall not be terminated by the Board of Education of a school district except for one or more of the following causes: ...

> (4) Willful or persistent violation of, or failure to obey, the school laws of the state or the published regulations of the board of education of the school district employing him;....

Ms. Burgess argues that the trial court correctly found Policy 2026 to be fatally vague and indefinite. Specifically, Ms. Burgess agrees with the trial court's determination that the phrase "a few minutes" and the word "responsible" used in the same sentence of Policy 2026 do not prohibit specific conduct and do not specify what results follow a violation of the policy.

Whether or not Policy 2026 is fatally vague or indefinite is a question of law. As such, we may independently review the policy, *City of Cabool v. Missouri State Board of Mediation*, 689 S.W.2d 51, 54[3, 4] (Mo. banc 1985), guided by the standards set forth in the following cases.

In *Thompson v. Southwest School District*, 483 F.Supp. 1170 (W.D.Mo.1980), which dealt with the constitutionality of Section 168.114, the court stated that teachers employed under an indefinite contract have acquired a property interest in their employment so that "failure to fairly warn these individuals of the proscribed conduct might clearly deny them this 'property interest' without adequate notice." *Id.* at 1179[11, 12]. And, when dealing with both a civil statute that imposes penalties for prohibited conduct and a property interest acquired by a teacher under an indefinite contract, "[the] standards for determining if the statute is unconstitutionally vague should be governed by the tests set forth in criminal and first amendment areas...." *Id.*

It is undisputed that civil as well as criminal statutes must be sufficiently clear to give fair warning and provide a standard against which conduct can be uniformly judged. This is particularly true where a challenged civil statute allows imposition of penalties for prohibited conduct....

*Thompson* at 1179[11, 12] (citing *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926)).

In *Ross v. Robb*, 662 S.W.2d 257 (Mo. banc 1983), our Supreme Court, citing *Thompson*, applied the "strict standards of construction to be employed in criminal and first amendment contexts" to determine the constitutionality of Section 168.114. *Id.* at 259[2].

In *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), a First Amendment case involving free speech, the United States Supreme Court insisted "that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* at 108, 92 S.Ct. at 2298–99. However, the Court stated that "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Id.* at 110, 92 S.Ct. at 2300. And, in *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), also a First Amendment case, the Court stated that:

there are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions [stated in the Hatch Act] may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.

*Id.* at 578–579, 93 S.Ct. at 2897.

In *Bell v. Board of Education of the City of St. Louis*, 711 S.W.2d 950 (Mo.App. 1986), the Board of Education found that the principal of an elementary school had violated a Board regulation requiring "reasonable precautionary measures" to prevent accidents. *Id.* at 953[3]. The principal claimed that the regulation was unconstitutionally vague. In upholding the Board's decision we stated that "[s]o long as the terms or words used in the regulation are of common usage and are understandable by persons of ordinary intelligence, the regulation satisfies the constitutional requirement of definiteness and certainty." *Id.* at 953[1, 2].

In light of the foregoing standards, District Policy 2026 is not fatally vague. First, the phrase "a few minutes" as found in the policy, although not mathematically certain, is of such common usage so that

the policy is sufficiently clear and provides fair warning of proscribed conduct. The use of "a few minutes" would not prevent Ms. Burgess from sufficiently understanding and complying with Policy 2026 while exercising ordinary common sense.

■ Second, the trial court erred in its interpretation of the word "responsible" as it appears in the same sentence with "a few minutes". The trial court states that "responsible" refers to an indefinite penalty to be imposed on a teacher who leaves her pupils for more than a few minutes. But a reading of the entire context of Policy 2026 reveals that "responsible" refers to requiring a staff member to monitor the students of a teacher who will be away from her students for more than a few minutes. Such use of the word "responsible" does not render Policy 2026 fatally vague.

■ Third, the fact that Policy 2026 does not itself describe the results of violating the policy does not make it void for vagueness. Both the contract executed by Ms. Burgess and the Board's published policies refer to the Tenured Teacher Act which includes Section 168.114. The teaching contract signed by Ms. Burgess states "[t]he provisions of the Tenured Teacher Act (R.S.Mo.1978 [now R.S.Mo.1986], Sections 168.102–168.130) are incorporated herein and made a part hereof."

In *Carter County School District v. Palmer,* 582 S.W.2d 347 (Mo.App.1979), the court, in finding that Mr. Palmer did not willfully violate school board policies, applied Section 168.114 to certain school policies, neither of which described the consequences of violating the policies. *Id.* at 349[2]. While Ms. Burgess correctly asserts that the court in *Carter* found a third policy to be merely "descriptive and recommendatory" and therefore not capable of being violated, the reason for its vagueness was not because one had to refer to Section 168.114 for the consequences of violating that policy. *Id.* at 349[1].

Finally, in *Westbrook v. Board of Education of the City of St. Louis,* 724 S.W.2d 698, 701[3] (Mo.App.1987) we indicated that the use of the word "should" in the school board's policy did not negate the mandatory nature of that policy. A logical reading of Policy 2026 leads to the same result.

Therefore, based on our independent review of Policy 2026 using the proper standards to determine vagueness, we find that Policy 2026 was not fatally vague and that reference to Section 168.114 sets forth the consequences that follow its violation. District's point is meritorious.

■ District's second point on appeal is that the trial court failed to give all presumptions and inferences in favor of the Board, failed to grant deference to the Board's interpretation of its own policy, and failed to leave determination of credibility to the Board. The second point refers to our generally limited review of the Board's decision. However, as previously stated, we may independently review an agency's resolution of a question of law. *City of Cabool* at 54[3, 4].

The trial court apparently based its reversal of the Board's decision solely on the court's perceived vagueness of Policy 2026. The trial court could properly review that question of law without being subject to the general limitations of review.

■ District's final point on appeal is that the trial court erred in not affirming the Board's determination that Ms. Burgess willfully violated Policy 2026. Our review is of the Board's findings and decision and not of the trial court's judgment. *City of Cabool* at 53[1]. The Missouri Teacher Tenure Act provides that Section 536.140 governs our review of the Board's findings. As previously stated, our review of the Board's determination that Ms. Burgess willfully violated Policy 2026 is limited. *Merideth v. Board of Education of Rockwood R–6 School District,* 513 S.W.2d 740, 745[1–5] (Mo.App.1974), expresses the limits to our review:

The reviewing court may only determine whether the board could reasonably have made its findings and reached its result or whether the decision was clearly contrary to the overwhelming weight of evidence. *Blunt v. Parker,* 495 S.W.2d 708, 712 (Mo.App.1973). The court may not substitute its judgment on the evidence

and may not set aside the board's decision unless it is not supported by competent and substantial evidence on the whole record. In addition the evidence must be considered in a light most favorable to the board's decision, together with all reasonable inferences which support it. *Harrod v. Board of Education, City of St. Louis,* 500 S.W.2d 1, 6 (Mo. App.1973). If evidence before a board would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding. *Hanebrink v. Parker,* 506 S.W.2d 455, 458 (Mo.App.1974). Also the determination of the credibility of the witnesses is a function of the administrative tribunal. *Hanebrink v. Parker, supra,* 458. *Id.*

Section 536.140 provides that when applying law, including the agency's own rules, to fact, "the court may weigh evidence for itself and determine the facts accordingly ..." while giving "due weight to the opportunity of the agency to observe the witnesses, and to the expertness and experience of the particular agency." Section 536.140.3. Additionally, "there is a strong presumption of validity in favor of the administrative decision and a reluctance by the court to interfere with such discretion." *Conder v. Board of Directors of Windsor School,* 567 S.W.2d 377, 379[3, 4] (Mo.App.1978).

We first review the Board's finding that Ms. Burgess's conduct was a violation of Policy 2026. The evidence viewed in a light most favorable to the Board's decision reveals that Ms. Burgess left seven of her pupils in her classroom unsupervised for fifteen to seventeen minutes. This finding by the Board is supported by substantial and competent evidence on the whole record. Although respondent offered conflicting evidence that she had returned to her classroom several times, the fact that the evidence could warrant either of two opposed findings does not relieve us from being bound by the Board's determination. *Merideth* at 745[1–5]. The Board could have reasonably concluded from the evidence that Ms. Burgess's conduct violated Policy 2026.

■ Next we review the Board's determination that Ms. Burgess willfully violated Policy 2026. Section 168.114.1(4) requires a willful or persistent violation of or failure to obey a published regulation to terminate an indefinite contract. The court in *Carter,* while deciding what meaning the legislature intended the word "willful" to have, stated:

Is it enough ... that the offender intends to act, and the action happens to be inconsistent with a regulation, or must he or she act *with the intention* of violating or failing to obey a regulation? The first of these interpretations merely involves one intention, viz. to act in the absence of reflex or coercion; the second involves two intentions, viz. one to act and one to violate or disobey. We believe the latter interpretation provides the meaning intended by the legislature.

*Carter* at 349[2].

The *Carter* court held that there was no willful violation of the school board regulation because "there was no evidence at all that appellant had ever read or had any knowledge of the regulations he is charged with having *willfully* disregarded. Much less is there any indication in the record that appellant acted with the intention to violate or fail to obey any regulation." *Carter* at 350[4].

Initially, we note that willfulness is seldom directly proved. *Carter* at 350[4]. In *Ortbals v. Special School District of St. Louis,* 762 S.W.2d 437, 440[3] (Mo.App. 1988), Ortbals admitted that she was aware that a corporal punishment policy existed and that she had read and signed her previous employment contracts each of which incorporated all Board policies by reference. *Id.* She also admitted to the school principal that she had engaged in inappropriate behavior towards a student prior to the incident which led to her termination. *Id.* The court in *Ortbals* held that competent and substantial evidence supported the Board's determination that Ortbals had willfully violated the board policy. *Id.*

Here, there is evidence that Ms. Burgess, an experienced teacher, had read and had knowledge of Policy 2026. Ms. Burgess executed a contract that specifically referred to Board policies and Section 168.-114. Ms. Burgess received a copy of the Board's published policies. At the Board hearing Ms. Burgess responded affirmatively when asked if it was true that she had received and read the Board policies at the time she signed her teaching contract.

Other portions of Ms. Burgess's testimony at the Board hearing indicate that prior to the incident on May 15, 1990, Ms. Burgess knew there was a Board policy that prohibited leaving students unattended:

Q: If someone had asked you during the morning of May 15th, 1990, is there a Board Policy about not leaving children unattended, what would your response have been?

A: If anybody would have asked me on that morning I'm sure there must be, but I certainly couldn't give a number.

Q: But you were under the definite impression such a policy existed?

A: I would imagine there had to be.

Additional testimony of Ms. Burgess indicates that she was aware of the policy just prior to the incident:

Q: Then what did you do with both sets [of students], those that were going to stay out and those that were going back?

A: Okay. The ones that were going to go back in stood by me for a minute and there was another teacher out on the playground and so I turned around and let them go out on the playground and took the others back in and got them situated....

Q: What did the other children do?

A: There were other teachers out there and we just overlapped and that's just something we always did and understood. So the rest of my kids went on and I turned around and I came back in with these students and we were in the room, I was getting ready to get them adjusted....

Ms. Burgess's testimony indicates that, prior to leaving her students on the play-

ground, she determined that a staff member was present to monitor her students, but a short time later she left some of her students in a classroom without any staff member present. Thus, the evidence indicates that just prior to the incident Ms. Burgess was aware of a Board policy that prohibited leaving students unattended for more than a few minutes, intended to leave several of her students unsupervised for more than a few minutes, and knew that her conduct violated that policy. Therefore, substantial and competent evidence supports the Board's finding that Ms. Burgess's conduct was willful.

Judgment reversed and remanded with instructions to reinstate the decision of the Board.

CARL R. GAERTNER, C.J., and AHRENS, J., concur.